LEE, P.J.,
 

 for the Court:
 

 PROCEDURAL HISTORY
 

 ¶ 1. Jeremy Pitts was found guilty in the Circuit Court of George County of murder. He was sentenced to life in the custody of the Mississippi Department of Corrections. Pitts filed a motion for a new trial and a motion for a judgment notwithstanding the verdict, which were denied by the trial court.
 

 ¶ 2. Pitts appeals, asserting the following issues: (1) the trial court erred in granting the elements instruction on murder proposed by the State and the self-defense instruction proposed by the State; (2) the jury received an erroneous instruction on manslaughter; (3) his counsel was ineffective; and (4) the evidence was insufficient to support the verdict. Finding no error, we affirm.
 

 FACTS
 

 ¶ 3. Pitts testified that on April 1, 2007, he and Matthew Joseph Rogers, the victim, got into an argument over the phone. Both men were members of a gang called the Simon City Royals. Rogers told Pitts that he had gotten into an altercation over the phone with Jay Bullock, the leader of the gang, because Bullock had asked Rogers to “lay down his flag,” which meant to leave the gang. Because Rogers refused to leave the gang, Bullock ordered that Rogers be “violated,” or “called out for minutes,” which meant that the gang members would physically fight each other to settle their grievances. Rogers told Pitts that he was going to “shoot [Bullockj’s house up.” Pitts told Rogers not to do it because Bullock had an “old lady” and kids in the house. Pitts and Rogers started arguing over the phone. According to Pitts, Rogers threatened to kill him for taking up for Bullock.
 

 ¶ 4. On April 2, 2007, Ray Hancock and Kevin Davis, also members of the Simon City Royals, and Rogers assembled at Hancock’s house in George County, Mississippi, to “take care of this situation.” Pitts arrived at the house separately. Pitts testified that Rogers, Hancock, and Davis were upstairs “drinking and smoking.” Hancock’s wife, Amy, was also present. According to Amy, Pitts entered the house and said to Rogers: “MF, I got beef with you.” Pitts and Rogers began to argue. Pitts had a gun in his waistband under his shirt, and Hancock was holding Rogers’s gun. Pitts testified that Rogers asked Hancock to give the gun back; Hancock refused; and Pitts, Rogers, and Hancock began arguing. According to Pitts, in the
 
 *177
 
 midst of the argument, Rogers reached for the gun, and Pitts shot him. Pitts then left the scene. Bullock, who was waiting outside in Hancock’s yard, got in the car with Pitts. Pitts told Bullock that he had shot Rogers. Bullock responded: “That’s what he gets.” Pitts testified that he was fearful for his life and did not intend to kill Rogers.
 

 ¶ 5. Pitts, Hancock, and Davis were charged with Rogers’s murder. Hancock and Davis pleaded guilty to manslaughter.
 

 DISCUSSION
 

 I. JURY INSTRUCTIONS
 

 ¶ 6. Pitts argues that the State’s jury instruction S-2 combined the elements of deliberate-design murder and depraved-heart murder. No objection was made to this instruction at trial. Pitts argues the instruction is plain error because he was only indicted for deliberate-design murder. Pitts also argues that it was plain error for the trial court to deny his self-defense instruction.
 

 1. Jury Instruction S-2
 
 — Murder
 

 ¶ 7. Jury instruction S-2 states:
 

 If you find from the evidence in this case beyond a reasonable doubt that:
 

 [[Image here]]
 

 3. The Defendant, Jeremy Neil Pitts, did willfully, feloniously, and with deliberate design kill Matthew Rogers by shooting the said Matthew Rogers with a deadly weapon, to-wit: a firearm; and
 

 4. The killing was without authority of law and not in necessary self-defense,
 

 then you are sworn to find the Defendant guilty of Murder;
 

 OR
 

 If you find from the evidence in this case, beyond a reasonable doubt that:
 

 [[Image here]]
 

 3. The Defendant, Jeremy Neil Pitts, did willfully, feloniously, and with deliberate design kill Matthew Rogers by shooting the said Matthew Rogers with a deadly weapon, to-wit: a firearm;
 

 4. The killing was without authority of law and not in necessary self-defense, and
 

 5. The killing was done during an act eminently [sic] dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of Matthew Rogers or any human being,
 

 then you are sworn to find the Defendant, Jeremy Neil Pitts, guilty of Murder.
 

 ¶ 8. Pitts was indicted under Mississippi Code Annotated section 97 — 3—19(l)(a) (Rev.2006), which states: “The killing of a human being without the authority of law by any means or in any manner shall be murder ... [w]hen done with deliberate design to effect the death of the person killed, or of any human being[.]” Pitts argues that the jury instruction was erroneous because it stated that he could be found guilty of murder if he evinced a “depraved heart.” The language referring to depraved-heart murder is contained in Mississippi Code Annotated section 97-3-19(l)(b) (Rev.2006), which states that murder is committed by an act “eminently [sic] dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual.” Pitts argues that this is further complicated by the handwritten verdict returned by the jury, which states: “We, the
 
 *178
 
 jury, find the defendant, Jeremy Neil Pitts, guilty of depraved[-]heart murder.”
 

 ¶9. In
 
 Young v. State,
 
 891 So.2d 813, 820 (¶ 17) (Miss.2005), the Mississippi Supreme Court found no error in allowing a depraved-heart murder clause to be added to a deliberate-design jury instruction. In
 
 Young,
 
 the supreme court held that “our cases have for all practical purposes coalesced the two so that [sjection
 
 97-3-
 
 19(1)(b) [depraved heart] subsumes (l)(a) [deliberate design].”
 
 Id.
 
 In its holding, the supreme court cited
 
 Mallett v. State,
 
 606 So.2d 1092, 1095 (Miss.1992), which states that “[a]s a matter of common sense, every murder committed with deliberate design is by definition done in the commission of an act imminently dangerous to others, evincing a depraved heart.”
 
 Id.
 
 As the supreme court has held that there is no error in coalescing the two sections, this issue is without merit.
 

 2. Jury Instruction S-6B
 
 — Self-De
 
 fense
 

 ¶ 10. The self-defense instruction, S-6B, states:
 

 The Court instructs the Jury that to make a killing justifiable on the ground[ ] of self-defense, the danger to the Defendant must be either actual, present and urgent, or the Defendant must have reasonable grounds to apprehend a design on the part of
 
 some person
 
 to kill him or to do him some great bodily harm, and in addition to this he must have reasonable grounds to apprehend that there is imminent danger of such design being accomplished. It is for the jury to determine the reasonableness of the ground upon which the defendant was acting. If you, the Jury, unanimously find that the defendant acted in self-defense, then it is your sworn duty to return a verdict in favor of the defendant.
 

 (Emphasis added).
 

 ¶ 11. Pitts argues that this jury instruction should have been denied based on the portion of the first sentence, which states: “the Defendant must have reasonable grounds to apprehend a design on the part of
 
 some person
 
 to kill him or to do him some great bodily harm.... ” (Emphasis added). Pitts argues that there were multiple people in the house when the shooting occurred, and the jury instruction was flawed because it failed to name a specific person. Pitts did not object to this instruction; in fact, his own proposed self-defense instruction, D-l, did not state a specific person but instead used the language: “some person.”
 

 ¶ 12. The standard of review for jury instructions is as follows:
 

 The instructions are to be read together as a whole, with no one instruction to be read alone or taken out of context. A defendant is entitled to have jury instructions given which present his theory of the case. However, the trial judge may also properly refuse the instructions if he finds them to incorrectly state the law or to repeat a theory fairly covered in another instruction or to be without proper foundation in the evidence of the case.
 

 Young,
 
 891 So.2d at 819-20 (¶ 16) (quoting
 
 Howell v. State,
 
 860 So.2d 704, 761 (¶ 203) (Miss.2003)).
 

 ¶ 13. We find that when read together, the jury instructions are clear that the person referred to in the self-defense instruction was Rogers. Pitts was indicted for Rogers’s murder, and Rogers was the only person who had threatened him with harm. Jury instruction S-2 makes clear that Rogers was the victim of the shooting. At no point did Pitts allege that he feared
 
 *179
 
 anyone else in the room besides Rogers. We find this argument is without merit.
 

 II. MANSLAUGHTER
 

 ¶ 14. Pitts argues the jury incorrectly received an instruction on heat-of-passion manslaughter when it should have been instructed on another theory of manslaughter, such as imperfect self-defense.
 

 ¶ 15. The imperfect self-defense theory is as follows: “an intentional killing may be considered manslaughter if done without malice but under a bona fide (but unfounded) belief that it was necessary to prevent death or great bodily harm.”
 
 Wade v. State,
 
 748 So.2d 771, 775 (¶ 12) (Miss.1999) (citing
 
 Lanier v. State,
 
 684 So.2d 93, 97 (Miss.1996)).
 

 ¶ 16. While the theory of imperfect self-defense was not raised at trial, Pitts now argues that it was plain error for the trial court to grant an instruction for heat-of-passion manslaughter but not imperfect self-defense. He argues the evidence did not support an instruction for heat-of-passion manslaughter; rather, some alternative form of a manslaughter instruction should have been given. The jury was given three separate instructions on manslaughter. Jury instruction S-3 states that if the State failed to prove every element of murder, then manslaughter may be considered. Jury instruction S-8 instructed the jury on heat-of-passion manslaughter. Jury instruction D-3 instructed the jury that if it found that Pitts had shot Rogers without malice or deliberate design, then it could find Pitts guilty of manslaughter. The jury was also given a self-defense instruction.
 

 ¶ 17. “Not every instruction need cover every point of importance, so long as the point is fairly presented elsewhere.”
 
 Taylor v. State,
 
 597 So.2d 192, 195 (Miss.1992). We find that Pitts’s theory of defense was fairly presented to the jury. Pitts was given several manslaughter instructions, as well as a self-defense instruction. He did not propose an imperfect self-defense instruction at trial, and we cannot find that it was plain error that the instruction was not given. This issue is without merit.
 

 III. INEFFECTIVE ASSISTANCE OF COUNSEL
 

 ¶ 18. Pitts argues that his counsel was ineffective for the following reasons: (1) he failed to object when the State called Rogers’s mother to testify; (2) he did not know what the key witnesses for the State would say; (3) he failed to object to the introduction of a gang-related document being introduced into evidence; (4) he failed to object to certain evidence given to the jury; (5) he failed to object to certain jury instructions; (6) he failed to request a proper manslaughter instruction; (7) he referenced gang activity in front of the jury; and (8) he failed to move to suppress Pitts’s statement to law enforcement.
 

 ¶ 19. As a general rule, claims of ineffective assistance of counsel are better suited for consideration in post-conviction-relief proceedings.
 
 Pittman v. State,
 
 836 So.2d 779, 788 (¶ 43) (Miss.Ct.App.2002). The merits of an ineffective-assistance-of-counsel claim on direct appeal should be addressed only when “(1) the record affirmatively show[s] ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge.”
 
 Colenburg v. State,
 
 735 So.2d 1099, 1101 (¶ 5) (Miss.Ct.App.1999). Review on direct appeal of an ineffective-assistance-of-counsel claim is confined strictly to the record.
 
 Id.
 
 at 1102 (¶ 6).
 

 
 *180
 
 ¶ 20. To prove ineffective assistance of counsel, Pitts must show that: (1) his counsel’s performance was deficient, and (2) this deficiency prejudiced his defense.
 
 Strickland, v. Washington,
 
 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). There is a strong presumption that counsel’s performance falls within the range of reasonable professional assistance.
 
 Id.
 
 at 689, 104 S.Ct. 2052. To overcome this presumption, “[t]he defendant must show that there is a reasonable probability that, but for the counsel’s unprofessional errors, the result of the proceeding would have been different.”
 
 Id.
 
 at 694, 104 S.Ct. 2052.
 

 ¶ 21. Pitts argues that the testimony of the victim’s mother, Glenda Rogers, was prejudicial and inflammatory. Glenda was the State’s first witness. During her testimony, Glenda identified a picture of her son, stated that Rogers and Pitts were friends, and testified that she received a letter that referenced Rogers’s death from Pitts while he was incarcerated. Pitts asserts Glenda presented no relevant testimony, and she was nothing more than a “victim-impact” witness. Although Pitts’s attorney did not object to Glenda being called as a witness, he objected to the admission of four pages of gang-related documents that Glenda found in Rogers’s room. The objection was sustained. Pitts’s attorney also objected to Glenda’s testimony as to her feelings about Rogers’s membership in the gang. This objection was also sustained. A counsel’s choice of whether or not to make certain objections falls within the ambit of trial strategy.
 
 Scott v. State,
 
 742 So.2d 1190, 1196 (¶ 14) (Miss.Ct.App.1999). We cannot find that a reasonable probability exists that absent Glenda’s testimony the outcome in this case would have been different. Even if Pitts could prove that his attorney should have objected to the testimony, Pitts has failed to show that his failure to do so prejudiced Pitts’s defense.
 

 ¶22. Next, before opening statements, Pitts’s attorney asked the trial court to allow him to interview two of the State’s witnesses, Hancock and Davis, because he did not know what they were going to say when they testified. Pitts’s attorney stated that he had received a copy of the witnesses’ proposed testimonies, but he had not personally interviewed them. The trial court denied his request. During opening statements, Pitts’s attorney told the jury he had not been allowed to speak with the State’s witnesses because the witnesses’ attorneys had prevented him from doing so. Pitts does not state how this made his counsel deficient or how this prejudiced his defense. Pitts’s attorney stated that he had received information from the State on the proposed testimonies of these witnesses. We find that this argument is without merit.
 

 ¶ 23. As for the mention of gang-related activity, we note that Pitts’s attorney repeatedly objected to the introduction of any evidence that would show Pitts was a gang member. His attorney’s objections were overruled by the trial court based on
 
 Hoops v. State,
 
 681 So.2d 521, 530-81, 537 (Miss.1996) (holding that evidence of gang membership can be admitted into evidence if the probative value of its introduction outweighs its prejudicial effect). We find that this argument is without merit.
 

 ¶ 24. Pitts next argues that his counsel failed to propose or object to certain jury instructions. The choice of whether or not to make certain objections falls within the ambit of trial strategy.
 
 Scott,
 
 742 So.2d at 1196 (¶ 14). As we have found that the jury instructions sufficiently instructed the jury on Pitts’s theory of the case, we cannot find that his attorney was ineffective on this ground.
 

 ¶ 25. Finally, Pitts argues that his statement to law enforcement was only
 
 *181
 
 made after promises of leniency, and his counsel should have filed a pretrial motion to suppress his confession. At no time during trial did Pitts indicate that his confession was coerced. Pitts voluntarily went to the sheriffs department to give a statement. We find that the record before us on appeal is insufficient to affirmatively show ineffective assistance of counsel of constitutional dimensions.
 

 IV. SUFFICIENCY OF THE EVIDENCE
 

 ¶ 26. In challenging the legal sufficiency of the evidence, “the critical inquiry is whether the evidence shows ‘beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.’ ”
 
 Bush v. State,
 
 895 So.2d 836, 843 (¶ 16) (Miss.2005) (quoting
 
 Carr v. State,
 
 208 So.2d 886, 889 (Miss.1968)). If, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found, beyond a reasonable doubt, the essential elements of the crime existed, this Court will affirm the denial of a motion for a directed verdict.
 
 Id.
 
 But if the facts and inferences “point in favor of the defendant on any element of the offense with sufficient force” that no reasonable juror could have found beyond a reasonable doubt that the defendant was guilty, then we must reverse and render.
 
 Id.
 
 (quoting
 
 Edwards v. State,
 
 469 So.2d 68, 70 (Miss.1985)).
 

 ¶ 27. Mississippi Code Annotated section 97 — 3—19(1)(a)—(b) states:
 

 (1) The killing of a human being without the authority of law by any means or in any manner shall be murder in the following cases:
 

 (a) When done with deliberate design to effect the death of the person killed, or of any human being;
 

 (b) When done in the commission of an act eminently [sic] dangerous to others and evincing a depraved heart, regardless of human life, although without any! premeditated design to effect the death of any particular individual[.]
 

 ¶28. Pitts admitted to the jury that Rogers was unarmed when he shot him. All the witnesses confirmed that Rogers was unarmed. Several people were present in the room, and others, including an infant, were present in the house. Pitts left the scene without ensuring that Rogers received medical assistance. The jury also' heard Pitts’s testimony that he feared that Rogers might harm him because of an altercation they had during a phone conversation. The jury received instructions on murder, manslaughter, and self-defense. It was for the jury to decide whether the elements of murder were proven by the State. Viewing the evidence in the light most favorable to the State, we find that the evidence was legally sufficient to support the verdict. This issue is without merit.
 

 ¶ 29. THE JUDGMENT OF THE GEORGE COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., MYERS, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.