# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-KA-01022-COA

**DAVID ALLEN BRELAND A/K/A DAVID BRELAND**                                          **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                          **APPELLEE**

DATE OF JUDGMENT:        08/21/2024
TRIAL JUDGE:        HON. ROBERT B. HELFRICH
COURT FROM WHICH APPEALED:        FORREST COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:        OFFICE OF STATE PUBLIC DEFENDER
        BY: MOLLIE MARIE McMILLIN
ATTORNEY FOR APPELLEE:        OFFICE OF THE ATTORNEY GENERAL
        BY: JULIANNE KAY BAILEY
DISTRICT ATTORNEY:        EARL LINDSAY CARTER JR.
NATURE OF THE CASE:        CRIMINAL - FELONY
DISPOSITION:        AFFIRMED - 03/03/2026
MOTION FOR REHEARING FILED:

**BEFORE BARNES, C.J., WEDDLE AND LASSITTER ST. PÉ, JJ.**

**WEDDLE, J., FOR THE COURT:**

¶1. A Forrest County Circuit Court jury convicted David Breland of one count of first-degree murder and one count of leaving the scene of an accident. The circuit court sentenced him to serve a term of life imprisonment in the custody of the Mississippi Department of Corrections (MDOC) for murder. The circuit court also sentenced him to serve a term of five years in MDOC custody for leaving the scene of an accident, with the sentences set to run concurrently. Aggrieved, Breland argues that the evidence was insufficient to convict him and that he received ineffective assistance of counsel.

## FACTS

¶2.    On April 29, 2023, Officer Eric Lopez of the Hattiesburg Police Department responded to a call about a man lying injured on the side of the road. When Officer Lopez arrived, he noticed an unresponsive black male, later identified as Tyra Canady. Officer Lopez testified that Canady was "wet from the dew" and had "ants on him." The officer also noticed tire tracks leading to him and debris from a vehicle. Canady was taken to Forrest General Hospital, where he was pronounced dead.

¶3.    A surveillance video showed a vehicle swerving off the road several times near Camp Street where Canady was found. The video also showed that the driver of the vehicle did not apply the brakes.[1] After further investigation, law enforcement was able to determine that the parts from the vehicle that struck Canady were from a silver 2019 Chevy Cruze. The investigation led to Sergeant Gerald Essary questioning Breland on May 5, 2023. A Chevy Cruze was registered to Breland, and Breland lived near the scene of the crime. When Sergeant Essary arrived at Breland's home, he noticed Breland's vehicle had significant damage to the front driver's side. When Sergeant Essary asked Breland about the vehicle, he admitted that he was the usual driver of the vehicle, and he claimed that his vehicle was damaged because he hit a deer on the way home from work on "Saturday or Sunday."[2] Breland was taken into custody for further questioning.

---

[1] Additionally, Lieutenant Jason Jarvis, who conducts accident reconstruction for the Hattiesburg Police Department, testified that after examining the tire marks in the grass, he observed that there was no indication of any braking because there were no sliding marks.

[2] Body-camera footage revealed that Breland continuously changed the time he usually got off work. It was later discovered that Breland got off at 8:36 p.m. on Friday, April 28, 2023, the night before Canady was found.

¶4. According to Sergeant Essary's testimony at trial, once at the station, Breland continued to change his story about where he was during the time Canady was believed to have been hit. Breland eventually admitted to Sergeant Essary that he did encounter a black male that night, whom Essary later determined to be Canady. Breland claimed that Canady chased him back to his vehicle, but he was able to drive away. Breland continued to deny that he hit anybody with his car that night; however, the car parts that were recovered from the crime scene visually matched the damage to Breland's vehicle.

¶5. During the State's case-in-chief, the jury heard testimony from Officer Lopez, Dr. Robert Stringer from Forrest General Hospital, Sergeant Essary, and Lieutenant Jarvis. After the State rested, Breland moved to dismiss the charges alleging the State failed to make a prima facie case and failed to identify him at the scene at any time. The circuit court found that the State had met its burden and created a question of fact for the jury. After Breland was informed of his right to testify and not testify, the defense rested without Breland taking the stand.

¶6. After the jury deliberated, Breland was found guilty of one count of first-degree murder and one count of leaving the scene of an accident. The circuit court sentenced him to serve a term of life imprisonment and a term of five years in MDOC custody, with the sentences set to run concurrently. Subsequently, Breland filed a motion for judgment notwithstanding the verdict (JNOV) or a new trial, which the trial court ultimately denied. Aggrieved, Breland appeals.

**DISCUSSION**

3

## I. Sufficiency of the Evidence

¶7.	Appellate courts review whether the evidence is sufficient to sustain a conviction de novo. *Watts v. State*, 402 So. 3d 744, 748 (¶17) (Miss. 2025). When reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the prosecution. *Id*. "The relevant question is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brooks v. State*, 402 So. 3d 787, 790 (¶7) (Miss. Ct. App. 2025).

¶8.	Breland was convicted of first-degree murder. Mississippi Code Annotated section 97-3-19(1)(a) (Rev. 2020) defines first-degree murder as the "killing of a human being without the authority of law by any means or in any manner . . . [w]hen done with deliberate design to effect the death of the person killed." The State was required to prove beyond a reasonable doubt that (1) Breland killed Canady, (2) without the authority of law, and (3) with deliberate design to effect his death. *Williams v. State*, 164 So. 3d 1078, 1080 (¶7) (Miss. Ct. App. 2015).

¶9.	Breland contends that the State failed to present any evidence that he intended to swerve, much less that he intended to hit Canady. "Intent is a question of fact gleaned by the jury." *Pace v. State*, 369 So. 3d 588, 597 (¶30) (Miss. Ct. App. 2023).[3] "It [is] within the jury's province to draw reasonable inferences from the evidence based on their experience and common sense." *Broomfield v. State*, 878 So. 2d 207, 215 (¶30) (Miss. Ct. App. 2004);

---

[3] The jury was appropriately instructed that "malice or intent to kill may be inferred" from the intentional use of a deadly weapon. *See Gunn v. State*, 374 So. 3d 1206, 1210-11 (¶17) (Miss. 2023); *see also Brooks v. State*, 18 So. 3d 833, 836 n.4 (Miss. 2009) ("[A] vehicle driven in a dangerous manner would be considered a deadly weapon.").

*see Armistad v. State*, 412 So. 3d 399, 414 (¶59) (Miss. Ct. App. 2024) ("Intent may be established by inference from circumstantial evidence."). A jury's finding of fact is not to be overturned when there is credible evidence in the record from which the jury could have reasonably inferred the offense. *Id*. In this case, Sergeant Essary testified that after changing his story several times, Breland eventually admitted to interacting with Canady, which led to Breland being chased back to his car. The evidence presented at trial showed that following that initial interaction, without applying his brakes, Breland intentionally swerved off the road at a high rate of speed near where Canady was later found, and the car parts found at the scene visually matched the damaged parts of Breland's vehicle. Based on these facts, we find that a jury, under appropriate instructions from the court, could reasonably infer that Breland had the intent to hit Canady with his vehicle. Therefore, considering the evidence in the light most favorable to the State, we find that there was sufficient evidence to convict Breland of first-degree murder.

## II.     Ineffective Assistance of Counsel

¶10.    Breland alleges his trial counsel was ineffective for failing to offer a culpable negligence manslaughter instruction. To prove his counsel was ineffective, Breland must show (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. *Kleckner v. State*, 230 So. 3d 1042, 1043-44 (¶5) (Miss. Ct. App. 2017). "The defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. (quoting *Quinn v. State*, 191 So. 3d 1227, 1234 (¶27) (Miss. 2016)).

5

¶11.   "[G]enerally, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings. This Court will address such claims on direct appeal when [1] the record affirmatively shows ineffectiveness of constitutional dimensions, or [2] the parties stipulate that the record is adequate and the Court determines that the findings of fact by a trial judge able to consider the demeanor of witnesses, etc.[,] are not needed. This Court has also resolved ineffective-assistance-of-counsel claims on direct appeal when the record affirmatively shows that the claims are without merit." *Ross v. State*, 288 So. 3d 317, 324 (¶29) (Miss. 2020) (citations and internal quotation marks omitted). Reviewing the record on appeal, we find that Breland's claim is without merit. Therefore, we fully resolve his claim on direct appeal.

¶12.   When claiming ineffective assistance of counsel because of jury instructions, "[i]t is the duty of the appellant to demonstrate both error in failing to receive the instruction and the prejudice to the defense." *Havard v. State*, 928 So. 2d 771, 789 (¶28) (Miss. 2006) (quoting *Burnside v. State*, 882 So. 2d 212, 216 (¶22) (Miss. 2004)). "There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance and that the challenged action might be considered sound trial strategy." *Byrd v. State*, 294 So. 3d 86, 94 (¶30) (Miss. Ct. App. 2019). Here, it is clear from the record that trial counsel's strategy was to claim that the State failed to place Breland at the scene of the crime or prove that he hit Canady. Our Supreme Court has held that "trial counsel's decision to not request a jury instruction falls under the category of trial tactics, which are not subject to review." *Id*. at 95 (¶31) (quoting *Neal v. State*, 15 So. 3d 388, 406 (¶43) (Miss. 2009)).

¶13. Notwithstanding Breland's trial defense, the jury was given a second-degree murder instruction.[4] Our Supreme Court has described second-degree murder as "a reckless and eminently dangerous act directed toward a single individual." *Swanagan v. State*, 229 So. 3d 698, 704 (¶24) (Miss. 2017). However, the jury concluded from the evidence presented that Breland acted with the deliberate design to effect the death of Canady.

¶14. Accordingly, we find Breland's ineffective assistance of counsel claim is without merit.

## CONCLUSION

¶15. We find that the State presented sufficient evidence to support Breland's first-degree murder conviction, and his ineffective assistance of counsel claim is without merit. Therefore, we affirm Breland's convictions and sentences.

¶16. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., McDONALD, LAWRENCE, McCARTY, EMFINGER AND LASSITTER ST. PÉ, JJ., CONCUR. WESTBROOKS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**

---

[4] Breland's trial counsel also proposed a heat of passion manslaughter instruction. However, the trial court correctly refused to accept the instruction because there was no evidence to support a heat of passion instruction.